IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00880-PAB-NYW

PACIFIC SPECIALTY INSURANCE COMPANY, a California corporation,

    Plaintiff,

v.

SAVANNA POIRIER and
JASON MENDOZA,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on Plaintiff's Motion for Summary Judgment on the Duty to Defend [Docket No. 26] and Defendants Poirier's and Mendoza's Motion for Partial Summary Judgment on the Issue of Coverage [Docket No. 46]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**

This case arises out of an ATV accident.[1] On the evening of June 25, 2016, defendant Jason Mendoza ("Mendoza"), defendant Savanna Poirier ("Poirier"), and two other individuals went camping in the Roosevelt National Forest in Bellevue, Colorado. Docket No. 51 at 9, ¶ 5; Docket No. 46 at 1-2. Mendoza's plan was to camp for just one night. Docket No. 51 at 10, ¶ 10. The campsite was on a short spur off Pingree Park Road and was not in a campground. *Id*. ¶ 14. At some point between 1:00 a.m. and 2:00 a.m. on June 26, the four campers decided to go on a night ride on an ATV

---

[1] All facts are undisputed unless otherwise noted.

owned by Mendoza. *Id*. at 11, ¶ 17; Docket No. 46 at 3, ¶ 4. At approximately mile marker 2 on Pingree Park Road, the four campers drove off the edge of the road and fell about twenty yards over a cliff. Docket No. 51 at 9-10, ¶ 2, 6. The accident occurred at least two miles from the campsite. *Id*. at 11, ¶ 20.

On March 14, 2017, Poirier filed a civil complaint (the "state court complaint") against Mendoza in the District Court for Larimer County, Colorado. Docket No. 26 at 5, ¶ 3. As relevant here, the state court complaint alleges the following:

> 2. Upon information and belief, at all times material hereto, [Mendoza] was a resident of the City of Loveland and County of Larimer, State of Colorado.
>
> 5. On June 26, 2016, at approximately 2:08 a.m., [Poirier] was a passenger on a Kawasaki ATV (hereinafter "the ATV") traveling on Pingree Park Road near mile marker 2, in Bellvue, Colorado.
>
> 6. At the time of the crash, [Mendoza] was the owner and operator of the ATV.
>
> 7. At the time of the accident, [Mendoza] unlawfully drove the ATV in a careless and imprudent manner, without due regard for the width, grade, curves, corners, traffic, and use of the streets or highways causing him to lose control, leave the road, and roll the ATV and its occupants down a steep hill.

*Id*.[2] In the state court complaint, Poirier brought claims against Mendoza for negligence and negligence *per se*. Docket No. 26-2 at 2-3.

---

[2] Defendants dispute paragraph 3 of Pacific's statement of undisputed facts on the basis that these are not "facts" but rather allegations from the state court complaint. Docket No. 27 at 3, ¶ 3. However, the "fact" in paragraph 3 is not that the allegations in the state court complaint are true, but that the state court complaint was filed and that it contained certain allegations. Thus, the Court considers this fact undisputed for the purposes of this motion.

At the time of the accident, plaintiff Pacific Specialty Insurance Company ("Pacific") had issued a homeowner's insurance policy (the "Policy") to Mendoza, insuring the address of 615 Suntrail Drive, Loveland, Colorado. Docket No. 26 at 3, ¶ 1.[3] The Policy has a personal liability limit of $300,000. *Id*. As relevant here, the Policy provides, under a section titled "Exclusions," that coverage for personal liability and medical payments to others does not apply to "bodily injury or property damage . . . [a]rising out of the ownership, maintenance, use, loading, or unloading of motor vehicles or all other motorized land conveyances." *Id*. at 3-4, ¶ 2 (citing Docket No. 26-1 at 13, ¶ II.1.g(1)). The Policy further provides that this exclusion "does not apply to . . . a motorized land conveyance designed for recreational use off public roads not subject to motor vehicle registration and . . . [o]wned by an insured, but only on an insured location." *Id*. at 4, ¶ 2 (citing Docket No. 26-1 at 13, ¶ II.1.g(2)(b)). One of the Policy's definitions for "insured location" is "[a]ny part of a premises not owned by an insured and where an insured is temporarily residing." *Id*. at 4-5, ¶ 2 (citing Docket No. 26-1 at 8, ¶ 5(d)).

On April 13, 2018, Pacific initiated this lawsuit. Docket No. 1. Pacific seeks a declaratory judgment that (1) "the accident location did not occur on an insured location;" (2) Mendoza "was not temporarily residing at the camp site;" (3) "bodily injury

---

[3] Defendants dispute paragraphs 1 and 2 of Pacific's statement of undisputed facts on the basis that the Policy "has not been properly authenticated." Docket No. 27 at 3, ¶¶ 1-2. Pacific, in its reply brief, includes an affidavit authenticating the Policy. Docket No. 30-1. Moreover, defendants' statement of additional facts refer to the Policy and assume the accuracy of the policy language. Docket No. 27 at 4, ¶ 1. The Court is satisfied that the Policy is authenticated and considers the facts undisputed for the purposes of this motion.

3

arising out of the ownership or use of [] Mendoza's ATV is excluded" under the Policy; (4) "bodily injury arising out of the violation of a criminal law or local or municipal ordinance, whether or not an insured is charged or convicted, is excluded" under the Policy; (5) "there is no coverage under the Policy for the accident;" (6) Pacific "had no duty to defend" Mendoza against Poirier's lawsuit, and (7) Mendoza made false statements on his application entitling Pacific to cancel or rescind the Policy and that Pacific has no duty to perform any obligation under the policy. Docket No. 59 at 9-10, ¶ 40. On August 3, 2018, Mendoza and Poirer asserted counterclaims against Pacific for (1) bad faith and (2) breach of contract. Docket No. 19 at 8-9, ¶¶ 19-26. Mendoza and Poirier allege that Pacific "wrongfully denied either providing a defense to or obligating itself to indemnify [Mendoza] for any judgment." Docket No. 19 at 6, ¶ 8. Mendoza and Poirier further allege that they entered into an agreement (the "*Nunn* agreement") based on the Colorado Supreme Court's decision in *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010). *Id*. at 7-8, ¶¶ 13-17. In the *Nunn* agreement, Mendoza agreed to prosecute claims against Pacific and assign all proceeds recovered to Poirier in exchange for an agreement from Poirier not to execute on the judgment except against Pacific, allowing judgment to be entered against Mendoza in the amount of $950,000. *Id*.

On January 31, 2019, Pacific filed this motion for partial summary judgment on its claim that it had no duty to defend Mendoza under the policy. Docket No. 26. On July 12, 2019, defendants filed a motion for partial summary judgment on the duty to defend. Docket No. 46. On July 17, 2019, Pacific filed a motion for partial summary judgment on the duty to indemnify. Docket No. 49. On August 12, 2019, Pacific filed

an amended complaint, adding claims for recission and breach of contract against Mendoza. Docket No. 59 at 10-12, ¶¶ 43-57.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir.

1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

Pacific moves for summary judgment on the portion of its declaratory judgment claim that it had no duty to defend Mendoza against the state court complaint. Docket No. 59 at 10, ¶ 40(f).

Under Colorado law, the duty to defend is separate and distinct from an insurer's obligation to indemnify its insured. *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086 n.5 (Colo. 1991).[4] While "[t]he duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured, . . . [t]he duty to defend concerns an insurance company's duty to affirmatively defend its insured against pending claims." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (internal quotations and citations omitted).

> [T]he duty to defend arises where the alleged facts even *potentially* fall within the scope of coverage, but the duty to indemnify does not arise unless the

---

[4] Neither party refers to a choice of law provision in the insurance policy. However, both parties assume that Colorado law governs the claim. The Court will likewise assume that Colorado law governs the claim. *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

> policy *actually* covers the alleged harm. Where there is no duty to defend, it follows that there can be no duty to indemnify. However, where there is a duty to defend, there is not necessarily a duty to indemnify.

*Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996) (citation omitted).

"As a general rule under Colorado law, an insurer's duty to defend an insured is triggered solely on the basis of the allegations made within the four corners of the complaint, read against the insurance policy." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 960 (10th Cir. 2011); *see also Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004). To show that the insurer had a duty to defend, "the insured need only show that the underlying claim may fall within policy coverage." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo. 1999) (internal citations and quotations omitted). To defeat a duty to defend, an insurer bears a "heavy burden." *Hecla Mining*, 811 P.2d 1089. The insurer must establish that "there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Id.* at 1090. Where policy exclusions are implicated, "the insurer bears the burden of establishing that 'the allegations in the complaint are solely and entirely within the exclusions in the insurance policy.'" *Cotter Corp.*, 90 P.3d at 829 (citation omitted). Accordingly, where "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." *City of Littleton*, 984 P.2d at 613-14. If the underlying complaint includes more than one claim, a duty to defend against all claims asserted arises if any one of the claims arguably is a risk covered by the relevant insurance policy. *Horace Mann Insurance Co. v. Peters*, 948 P.2d 80, 85 (Colo. App. 1998) (citation omitted).

The existence of a duty to defend against a particular claim is a question of law. *See Bumpers v. Guar. Trust Life Ins. Co.*, 826 P.2d 358, 360 (Colo. App. 1991); *see also Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 639 (Colo. App. 2007).

The interpretation of an insurance policy is a legal question. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument. *Huizar*, 52 P.3d at 819. Policy provisions that are clear and unambiguous should be enforced as written. *Chacon*, 788 P.2d at 750. Where a term in an insurance policy is ambiguous, meaning it is susceptible to more than one reasonable interpretation, the Court will construe the term against the drafter and in favor of providing coverage to the insured. *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

As an initial matter, defendants contend that whether there is a duty to defend is not at issue in this case because, as the state court case has concluded, "there is no longer anything to defend." Docket No. 27 at 1-2. "Absent [an] identifiable claim against [a party], there [is] no actual controversy to be resolved in the declaratory-judgment action." *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1382 (10th

Cir. 2011).[5] The Court agrees with Pacific that, as a result of defendants' *Nunn* agreement, the duty to defend is at issue in this case. *See Nunn*, 244 P.3d at 122 (holding that "an insured who has suffered a judgment in excess of policy limits, even if the judgment is confessed and the insured is protected by a covenant not to execute, has suffered actual damages and will be permitted to maintain an action against its insurer for bad faith breach of the duty to settle"); *see also Boulder Plaza Residential*, 633 F.3d at 961 (noting that, under Colorado law, "where there is no duty to defend, it follows that there can be no duty to indemnify" (internal alterations omitted)); *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996) (noting that if an insurer has no duty to indemnify, it has no duty to settle).[6]

The Policy provides that coverage for personal liability and medical payments to others does not apply to "bodily injury . . . [a]rising out of the . . . use . . . of motor vehicles or all other motorized land conveyances." *See* Docket No. 26 at 3-4, ¶ 2. The state court complaint alleges that Poirier's injuries arose out of Mendoza's "dr[iving] the ATV in a careless and imprudent manner . . . causing him to lose control, leave the road, and roll the ATV and its occupants down a steep hill." *See* Docket No. 26 at 5-6, ¶ 3. Defendants do not appear to dispute that Poirier's claims are for bodily injury arising out of the use of a motor vehicle or motorized land conveyance. Although the

---

[5] "Federal law determines whether a district court may properly enter a declaratory judgment in a given case." *Tegu v. Vestal Design Atelier LLC*, No. 18-cv-01377-PAB-NRN, 2019 WL 3778312, at * 7 n.6; *see also Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384 (10th Cir. 1978).

[6] Additionally, defendants' counterclaims seek damages for failure to defend. Docket No. 19 at 9, ¶ 23.

9

Policy provides that this exclusion "does not apply to a motorized land conveyance designed for recreational use off public roads not subject to motor vehicle registration and . . . [o]wned by an insured, but only on an insured location," there is no basis from the four corners of the complaint to conclude that the accident occurred on an "insured location." *See id*. at 4, ¶ 2. The only plausible pathway for the accident site being an "insured location" is that it is "[a]ny part of a premises not owned by an insured and where an insured is temporarily residing." *See id*. at 4-5. However, the state court complaint alleges that Mendoza resided in Loveland, Colorado, and that the accident occurred in Bellvue, Colorado. Thus, there is no basis, from the four corners of the state court complaint, to conclude that the accident occurred on "any part of a premises" where Mendoza was "temporarily residing." *See id*.

Defendants argue that, at the time of the accident, Mendoza's temporary residence was a campground in Roosevelt National Forest, and the accident occurred on the "premises" of Roosevelt National Forest; thus, the state court complaint does not fit within an exclusion and Pacific has a duty to defend Mendoza. Docket No. 27 at 10-14. Defendants do not identify any authority that requires the Court to consider these facts, which are not evident from the four corners of the state court complaint.

Even if the Court assumes that it is appropriate to consider facts outside of the four corners of the underlying complaint, the Court finds no duty on Pacific's part to defend Mendoza. First, the phrase "where an insured is temporarily residing" in the Policy does not contemplate a one-night campsite. The plain meaning of the term "residing" requires some element of an intent to live at a location for more than one day. *See* Merriam-Webster's Collegiate Dictionary 1060 (11th ed. 2007) (defining "reside" as

"to dwell permanently or continuously" and "residence" as "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn"); *see also Starke*, 797 P.2d at 18 (noting that the words of a contract should be given their plain meaning according to common usage). Courts that have interpreted the phrase "temporarily residing" are in line with this interpretation. *See, e.g.*, *Farmers Union Mut. Ins. Co. v. Decker*, 704 N.W.2d 857, 862 (N.D. 2005) ("'Temporarily reside' clearly contemplates a longer stay than [a] brief one-time camping trip. If 'temporarily reside' were defined as [plaintiff] argues, any location an insured stayed overnight would become an 'insured location.' This interpretation defies common sense."). Although defendants cite to *Goldberg v. Amco Ins. Co.*, 2008 WL 5076926 at *6 (Cal. App. Dec. 3, 2008) (unpublished), which determined that a plaintiff had established a temporary residence in a campsite under substantially similar policy language, the Court finds that case distinguishable.[7] *Goldberg* concluded that the plaintiff established temporary residency by buying a twelve-month use permit and parking his trailer at a campsite "intending to spend [ten] days there." *Id*. By contrast, Mendoza only intended to spend one night at his campsite, and there is no evidence that he had any intent to return to the campsite in the future. Defendants have not offered, and the Court has not found, any authority interpreting the phrase "temporarily residing" to include a one-night campsite. Thus, the Court concludes that Mendoza's campsite was not where he

---

[7] The Court notes that, under the California Rules of Court, an unpublished opinion like *Goldberg* "must not be cited or relied on by a court or a party in any other action." *See* California Rules of Court, Rule 8.115(a).

temporarily resided within the meaning of the Policy and therefore was not an insured location.

Second, even assuming that the campsite was Mendoza's temporary residence, the accident did not occur on the "premises" of the campsite. A "premises" is "[a] house or building, along with its grounds." See Black's Law Dictionary 1219 (8th ed. 2004). This definition is in accordance with the policy's usage of the term "premises." See Docket No. 26 at 5, ¶ 2 ("'Residence premises' means the one family dwelling, other structures, and grounds where you reside. . . ."). Based on this definition, the "premises" of Mendoza's campsite is limited to the grounds surrounding the campsite. The accident occurred more than two miles away from Mendoza's campsite on a public road, which is not a part of the "grounds" of the campsite. See Docket No. 51 at 11-12, ¶¶ 20-24. Defendants disagree, arguing that the "premises" includes the entirety of Roosevelt National Forest. See Docket No. 46 at 15. This argument goes too far. It is an absurd result to conclude that the "premises" of a campsite includes the entire national forest surrounding it.[8] Defendants offer no authority that has interpreted the term "premises" as they suggest that the Court do. Thus, the Court concludes that Pacific had no duty to defend because the accident did not occur on the premises of an insured location.

Pacific is entitled to partial summary judgment on its claim that it had no duty to defend Mendoza from the state court complaint. Pacific asserts that, as a result,

---

[8] Pacific points out that the area of Roosevelt National Forest is 1,271 square miles. Docket No. 51 at 16. For perspective, that is approximately 1.2% of the area of Colorado, or just over half the size of Delaware.

defendants' counterclaims for bad faith and breach of contract both fail. Docket No. 26 at 1. "It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) (collecting cases). Defendants' counterclaims state that Pacific's "bad faith has proximately caused damages, including without limitation the excess judgment entered against [Mendoza] in the [state court complaint], along with damages suffered by [Mendoza] including aggravation, annoyance, inconvenience and emotional stress." Docket No. 19 at 9, ¶ 23. The Court agrees that these damages all flow from Pacific's denial of coverage. Defendants failed to respond to this argument in their response; thus, defendants appear to concede that, without a duty to defend, Pacific cannot be liable for bad faith or breach of contract. Accordingly, the Court will enter summary judgment for Pacific on both of defendants' counterclaims.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Summary Judgment on the Duty to Defend [Docket No. 26] is **GRANTED**. It is further

**ORDERED** that Defendants Poirier and Mendoza's Motion for Partial Summary Judgment on the Issue of Coverage [Docket No. 46] is **DENIED**. It is further

**ORDERED** that defendants' counterclaims are dismissed with prejudice. It is further

**ORDERED** that, given the disposition of this motion, on or before October 28, 2019, plaintiff shall file a brief, not to exceed five pages, identifying for the Court (1) whether plaintiff's Motion for Summary Judgment Regarding the Duty to Indemnify [Docket No. 49] is moot, and (2) what, if any, portions of Pacific's claim for declaratory judgment remain to be litigated.

DATED September 30, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge